520 P.2d 865

**STEIN–McMURRAY INSURANCE INC., a Nevada corporation, Plaintiff-Respondent,**

v.

**HIGHLANDS INSURANCE COMPANY, a foreign corporation, Defendant-Appellant.**

**No. 11373.**

Supreme Court of Idaho.

April 1, 1974.

Moffatt, Thomas, Barrett & Blanton, Michael G. Brady, Boise, for defendant-appellant.

Hawley, Troxell, Ennis & Hawley, Craig L. Meadows, Boise, for plaintiff-respondent.

DONALDSON, Justice.

The question presented to the Court by this case is whether a provision of an insurance contract providing for coverage of a mobile home while "in transit" and "during transportation" means that the mobile home must actually be in motion upon the highway or whether it provides for coverage from the time the mobile home leaves its point of departure until it safely reaches its point of destination, including those times while it is stopped along the way.

The facts of the case, stipulated to by the parties, are as follows. On January 19, 1971, Arrow Mobile Homes of Pendleton, Oregon, ordered the mobile home in question from the Shelterex Corporation.

The home was to be constructed by Shelterex and delivered by them to Pendleton. On March 1, the completed home was picked up by a vehicle owned by Shelterex at its Boise plant for delivery to Pendleton. That evening, the home was left along side the highway between LaGrande and Pendleton, Oregon because Oregon law prohibits the transportation of mobile homes after dark. The driver of the towing vehicle returned to Boise that night.

On March 5, the driver returned to the mobile home to continue the journey to Pendleton but he was unable to do so because of deep snow and high winds. The same conditions prevented any movement the next day. The home was finally moved on March 10, but the journey was again interrupted, this time because of mechanical difficulties. That day, the home was left at a roadside rest stop and the driver returned to Boise with the towing vehicle.

On or about March 12, strong winds blew the home over an embankment while it was parked at the roadside rest stop, totally destroying the home. Shelterex made claim against the appellant Highlands Insurance Company in the amount of $4,956.-88, which was the value of the destroyed mobile home less a deductible of $100.00. However, appellant claimed that under the policy it had issued its liability was limited to $1,000.00 and it tendered that amount to Shelterex, which refused the same. Shelterex subsequently assigned its claim to respondent Stein-McMurray Insurance which brought suit for the total claim. Respondent, pursuant to I.C. § 41–1839(2),[1] then deposited $1,000.00 with the district court.

The policy in question which appellant Highlands Insurance had issued to Shelterex provided for three different amounts of coverage. While the mobile home was on Shelterex's place of business in Boise or within one hundred feet of it, the maximum coverage was $250,000.00. If the home was at a location "not owned, leased, operated or regularly used" by Shelterex, the maximum coverage was $10,000.00. Finally, if the mobile home was "in transit" or "during transportation," the coverage was limited to $1,000.00. Shelterex had also purchased an insurance policy from the Carolina Casualty Insurance Company which provided for $5,000.00 coverage while the mobile home was "singularly attached to a towing vehicle."

The case was submitted to the district court upon stipulated facts and motions for summary judgment filed by both parties. The district court concluded that the terms "in transit" and "during transportation" meant that the mobile home must actually be in motion upon the highway in order for the $1,000.00 limitation to apply. Therefore, the mobile home was, when it was parked along side the highway, at a "location not owned, leased, operated or regularly used by the insured (Shelterex)." Thus, the appellant was obligated to pay the full amount of the claim in as much as the insurance contract provided for $10,000.00 coverage while the home was left at these locations. The district court then entered judgment in favor of respondent in the amount of $6,795.22, which included the claim of $4,956.88, interest of $161.35, attorneys fees stipulated to be $1,650.00, and costs of $27.00.

On appeal, appellant contends that the district court erred in ruling that the mobile home must actually be in motion upon the highway to be "in transit" or "during transportation." According to appellant, the mobile home was in transit from the time it left its point of departure at Boise and continued to be in transit until delivered in Pendleton. Therefore, the $1,000.-00 limitation of liability provided for in the insurance contract would apply.

---

1. "(2) In any such action, if it is alleged that before the commencement thereof, a tender of the full amount justly due was made to the person entitled thereto, and such amount is thereupon deposited in the court, and if the allegation is found to be true, or if it is determined in such action that no amount is justly due, then no such attorney's fees may be recovered."

The insurance contract in question does not define the terms "in transit" and "during transportation." Contracts for insurance are to be construed in view of the general objects of the policy and strict technical interpretation is to be avoided. Shields v. Hiram C. Gardner, Inc., 92 Idaho 423, 444 P.2d 38 (1968). In addition, any ambiguities in the policy will be resolved in favor of the insured. Medical-Dental Service, Inc. v. Boroo, 92 Idaho 328, 442 P.2d 738 (1968). However, where a word or phrase used in an insurance contract has a settled legal meaning or interpretation, that meaning or interpretation must be given even though other interpretations are possible.

> " * * * but we are here concerned with the meaning and intent of the word as contained in a formal, legal contract of insurance, a class of contracts which the courts are very frequently called upon to consider and construe, and it seems quite obvious that words and phrases in a contract of this nature, are used and intended to be used in the legal sense. The rule applicable here is stated in 17 C.J.S. Contracts § 300, p. 717, as follows: 'A phrase in a contract, if susceptible of two interpretations, must be given that according with settled law. Where the law gives to certain words an established meaning, this meaning is less readily controlled by the standard of interpretation otherwise applicable than is the meaning of other words.'" Rosenau v. Idaho Mutual Benefit Assn., 65 Idaho 408, 414, 145 P.2d 227, 230, (1944).

Respondent acknowledges that the great weight of authority defines "in transit" and "during transportation" to mean the time between leaving the point of departure until safely arriving at the point of destination.

> "The words, 'in transit' and 'transportation,' contained in an insurance policy, such as the ones involved herein, comprehend the carriage of goods from one point to another and ordinarily mean the movement of the goods on a transporting conveyance from the starting point to the point of delivery, including stops along the way incidental to the carriage. Of course, minor deviations from the customary route and temporary stops, even overnight, for the convenience of the operator of the conveyance and for other purposes connected with the carriage, will not remove the goods from the transportation." Dealers Dairy Products Co. v. Royal Insurance Co., 170 Ohio St. 336, 164 N.E.2d 745, 747 (1960). *See also* Annot., 80 A.L.R.2d 445 (1960).

Respondent cites no cases to the contrary. However, respondent argues that the cases interpreting the two phrases should not be controlling here because those cases involved transportation insurance policies while the one in question in this case is a commercial property insurance policy. Rather, respondent argues that the interpretation made by the district court is the most reasonable interpretation in as much as it provides for a full package of protection. Shields v. Hiram C. Gardner, Inc., *supra*.

Although the interpretation adopted by the district court and urged here by the respondent may provide more coverage in certain instances, it is a strained interpretation of the policy which the parties could not have intended. Such an interpretation could lead to a myriad of problems. For instance, if, as the mobile home was being towed along the highway, the driver of the towing vehicle stopped for a stop sign, the coverage provided by the policy would change from $1,000.00 to $10,000.00 for that period when the vehicle was not moving. If, however, the driver did not make a full stop, but instead kept the wheels turning ever so slightly, then the coverage would remain $1,000.00. Many more such examples are possible wherein it would be possible for the coverage to change every few seconds, depending upon the actions of the driver. Obviously the parties to the contract did not intend such a result. Therefore, the more reasonable interpreta-

tion of the terms "in transit" and "during transportation" is that given to them by the previous cases; i. e., the time from when the mobile home left its point of departure until it arrived at its point of destination, including any reasonable delays along the way that related to the transportation of the home.

In this case Shelterex was attempting to deliver the trailer pursuant to the purchase contract when it was destroyed. It was still in the course of being delivered. The stops that occurred were not because of any change in plans or for any personal reasons of the driver. They were due to unavoidable events over which neither party had control. Therefore, it is the decision of this Court that the trailer was still "in transit" and thus covered by the provision of the policy, Paragraph VII, Extension of Coverage, subparagraph E., Transportation.

Because appellant tendered into Court the full amount of coverage for transportation, $1,000.00, it is not obligated to pay attorneys fees. I.C. § 41–1839(2). Neither is it obligated to pay interest. The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion. Costs to appellant.

SHEPARD, C. J., and McQUADE, McFADDEN and BAKES, JJ., concur.